### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| **DANIEL CAMPBELL,** | : | **Case No. 2:23-cv-3332** |
| | : | |
| **Petitioner,** | : | |
| | : | **Chief District Judge Sarah D. Morrison** |
| **vs.** | : | **Magistrate Judge Chelsey M. Vascura** |
| | : | |
| **WARDEN, SOUTHEASTERN** | : | |
| **CORRECTIONAL INSTITUTION** | : | |
| | : | |
| **Respondent.** | : | |

## REPORT & RECOMMENDATION

Daniel Campbell, a state prisoner proceeding with counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court to consider the Petition (ECF Nos. 1, 1-1), the Return of Writ (ECF No. 7), Campbell's Reply (ECF No. 12), and the state court record. (ECF Nos. 6, 6-1, 6-2, 6-3). Because follow, it is **RECOMMENDED** that this action be **DISMISSED**.

### I.      Procedural History

#### State Trial Proceedings

Campbell was indicted on May 9, 2019, in the Court of Common Pleas for Fairfield County Ohio on one count of gross sexual imposition, five counts of illegal use of minor in nudity-oriented material or performance, and three counts of pandering sexually oriented matter involving a minor. (ECF No. 6 at PageID# 37-43). Campbell's counsel filed a Motion to Suppress the evidence that formed the basis of the charges, which was obtained by Campbell's probation officer following a warrantless search. (*Id.* at PageID# 47-62). Following a hearing, held on September 25, 2019, the trial court denied the Motion to Suppress. (ECF No. 6-1; ECF No. 6 at 84-87). Campbell subsequently entered a guilty plea to eight of the nine counts, was

sentenced to seven years imprisonment, and was required to register as a tier one sex offender. (ECF Nos. 6-2; ECF No. 6-3).

## Direct Appeal

Campbell appealed his convictions to the Fifth District Court of Appeals ("Court of Appeals"). (ECF No. 6 at PageID# 106-117). He asserted a single assignment of error, arguing the trial court erred in overruling his motion to suppress. (*Id*. at PageID# 120).  The Court of Appeals rendered an opinion on August 18, 2020, which recounted the following relevant facts:

{¶3} Campbell was indicted for two counts of robbery in May 2012, and he entered a guilty plea to one count in December 2012. Campbell pursued and exhausted his appellate rights and in December 2015 he began serving his three-year sentence. The trial court granted his request for judicial release in December 2017 and placed him on community control. Campbell signed a document captioned Acknowledgement, Agreement, & Additional Terms & Conditions of Community Control and that document contains a term regarding questioning and searches that states as follows:

{¶4} C. I consent to being questioned by any Community Control Officer. I consent to searches of my person, my property, my vehicle, and my residence at any time without a warrant. I understand this includes common areas and areas that are exclusive to me.

{¶5} Campbell was compliant with the terms of his community control order. His probation officer decided he was entitled to a reduced level of supervision but planned to search his home, a process she described as a "home check," prior to changing his status. The probation officer relied upon the community control conditions for authority to complete a search of Campbell's residence and cell phone without probable cause, reasonable grounds, or any other justification for the search.

{¶6} Probation Officer Conn conducted the "home check" on August 1, 2018, accompanied by other members of the probation office. Her colleagues secured the back door of the residence while she and other officers approached the front door and knocked. She was admitted by Campbell, and she explained her purpose. He did not object and she entered the home with the other officers and instructed Campbell to have a seat at the kitchen table while they conducted the search.

{¶7} During the search of Campbell's bedroom a cell phone was discovered. The cell phone was brought to Probation Officer Conn, and she reviewed text messages on the phone to ensure that it was Mr. Campbell's phone. She continued her search

of data accessible on the phone until she found what appeared to be pornographic images of minors. Conn conferred with Senior Probation Officer Casey Jones regarding how to proceed and Jones asked Campbell to confirm he owned this phone. Campbell affirmed it was his cell phone. The search was postponed until search warrants could be obtained for that phone and other electronic devices. The affidavit requesting the search warrant relied upon the images discovered by Ms. Conn when she looked through the cell phone.

{¶8} As a result of the discovery of pornographic images found on several electronic devices owned by Mr. Campbell, he was charged with nine felony offenses. Campbell filed a motion to suppress the evidence discovered by probation officer Conn contending that the search was not based on reasonable grounds to believe he had violated the terms of his community control and was unlawful. [The state] filed a memorandum contra contending that Campbell "knowingly, voluntarily and intelligently waived any of the limited Fourth Amendment protected possessed in exchange for his release from prison."

{¶9} The trial court conducted an oral hearing on the matter and heard testimony from the probation officer, Kelsey Conn. Conn explained that she had been a probation officer for five years and completed the probation officer training required by the Supreme Court of Ohio. She described the process of reviewing the terms of the conditions of community control with each of her probationers, which includes a consent "to search any time without a warrant." When asked about the home visits, she confirmed that they are unannounced, and the purpose was to confirm that the probationers were residing at their stated address and that there were no additional violations of terms of probation such as firearms or drugs. Ms. Conn also confirmed that the Fairfield County Probation Department conducts random searches even if the probationer has not aroused any suspicion that they might be in violation of the terms and conditions of their probation. She agreed that they commonly search probationers who have complied with all of the terms of their community control order.

{¶10} She confirmed that it was her common practice to do a home check when she is considering reducing the probationer's level of supervision to ensure complete compliance before the transfer, and she had planned to complete such a home check on Campbell prior to reassigning his case and towering his level of supervision. Up to the date of this home check, Campbell had been compliant with all the terms and conditions of his probation, had not tested positive for drugs, and had attended all of his mental health counseling as ordered. Conn confirmed that Campbell had not violated the terms and conditions of probation prior to August 1, 2018, and she had no suspicion, nor had she received information that he had committed any violation prior to the inspection. Conn expressed her belief that this fieldwork, or home check, was lawful or constitutional at the time it was conducted, and she claimed that she reviews the policies and procedures of her department on an annual basis to ensure that she is complying with the law.

3

{¶11} The trial court denied the motion to suppress finding that Campbell executed a valid consent to search his property and that the law enforcement officer was acting in good faith reliance upon a judicial order that the officer believed authorized her to act.

(*Id.* at PageID# 173-176). The Court of Appeals reversed Campbell's conviction and sentence, finding that the search violated Ohio statutory law (*Id.* at 179-196), which "provide[s] more protection to a probationer/parolee than what is required by the Fourth Amendment . . . ." (*Id.* at 184).

The State noted an appeal to the Supreme Court of Ohio, which accepted jurisdiction. (*Id.* at PageID# 204-205, 244). On October 13, 2022, the Supreme Court of Ohio reversed the Court of Appeals and reinstated Campbell's conviction, concluding that although there was a violation of an Ohio statute, the exclusionary rule did not apply because there was no violation of the Fourth Amendment. (*Id.* at 368-386).

### Federal Habeas Corpus Petition

On October 9, 2022, through counsel, Campbell commenced the instant federal habeas corpus petition. (ECF Nos. 1, 1-1). He raises one ground for relief:

**GROUND ONE:**  Violation of the Fourth Amendment Right Against Unreasonable Searches and Seizures

(ECF No. 1 at PageID# 6). Campbell summarizes his argument in the attachment to his petition:

Mr. Campbell raises one claim in his petition related to a Fourth Amendment violation as the result of an unconstitutional search and seizure. The crux of Mr. Campbell's claim rests with the protections granted by the Fourth Amendment to the United States Constitution, which guards against unreasonable searches and seizures. In this case, Mr. Campbell property was subjected to search and seizure absence any reasonable suspicion that any illegal activity was afoot.

(ECF No. 1-1 at PageID# 20).

4

Respondent argues in the Return of Writ that Campbell's claims are barred by *Stone v. Powell*, 428 U.S. 465 (1976). (ECF No. 7 at PageID# 649-652). Campbell filed a Reply, arguing that *Stone v. Powell* should not apply to him. (ECF No. 12).

## II.     STANDARD OF REVIEW

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state–court rulings and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

>Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)). The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.    ANALYSIS

Campbell argues that he is entitled to habeas relief because the evidence supporting his conviction was seized in violation of the Fourth Amendment. (ECF No. 1, 1-1, 12). Respondent contends that the claim is barred by the United States Supreme Court case, *Stone v. Powell,* 428 U.S. 465 (1976). The Court agrees.

"[W]here the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 482 (footnotes omitted). Clearly established precedent explains that *Powell*'s "'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Consequently, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.*

Accordingly, the *only* relevant question for this federal habeas Court is whether Campbell was provided an opportunity to present his Fourth Amendment claim to the Ohio state courts. He presented his claim to the trial court during a suppression hearing, and again to the Fifth District Court of Appeals and the Supreme Court of Ohio on direct appeal.  Campbell was not denied an opportunity to present his claim in state court and as a result, his Fourth Amendment claim is not cognizable in habeas corpus.

Campbell argues that *Stone v. Powell* does not bar his claim because the Ohio Supreme Court ignored relevant United States Supreme Court precedent and reached an erroneous

conclusion. (ECF No. 12 at PageID# 665-666). However, the *Stone v. Powell* bar applies

regardless of the merits of a habeas petitioner's Fourth Amendment claim:

> Under *Stone* the correctness of the state courts' conclusions is
> simply irrelevant. The courts that have considered the matter "have
> consistently held that an erroneous determination of a habeas
> petitioner's Fourth Amendment claim does not overcome the *Stone
> v. Powell* bar." *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir.1986);
> *see also, Willett*, 37 F.3d at 1270 (citing cases). An argument
> directed solely at the correctness of the state court decision "does
> not go to the fullness and fairness of his opportunity to litigate the
> claim [s], but to the correctness of the state court resolution, an issue
> which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35
> F.3d 1308, 1321 (9th Cir.1994). As succinctly put by the Seventh
> Circuit, "'full and fair' guarantees the right to present one's case,
> but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324
> F.3d 527, 532 (7th Cir.2003).

*Beechler v. Timmerman-Cooper*, No. 2:11-CV-696, 2012 WL 524440, at *15 (S.D. Ohio Feb.

16, 2012), *report and recommendation adopted,* No. 2:11-CV-696, 2012 WL 871205 (S.D. Ohio

Mar. 13, 2012).

Because Ohio provided Campbell with a procedural mechanism to litigate his Fourth

Amendment, this Court is without the power to address the merits of Ground One. Ground One

is therefore non-cognizable in federal habeas review and should be dismissed.

## IV.    CONCLUSION

Campbell's sole claim for relief is without merit. It is therefore **RECOMMENDED** that

the habeas petition be **DENIED,** and this action be **DISMISSED WITH PREJUDICE.**

For the foregoing reasons, the undersigned **RECOMMENDS:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF Nos.

   1, 1-1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the Petition because

   petitioner has not stated a "viable claim of the denial of a constitutional right" or

presented an issue that is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by Petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised

that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO RECOMMENDED**.


/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE